IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BRYANT ALEXANDER GROVER,    §
                            §
        Petitioner,         §
                            §
VS.                         §        CIVIL ACTION NO. H-07-4493
                            §        Consol. w/4:07-4533
                            §
NATHANIEL QUARTERMAN,       §
                            §
        Respondent.         §

## MEMORANDUM AND OPINION

The petitioner, Bryant Alexander Grover, filed this motion seeking habeas corpus relief under 28 U.S.C. § 2254. Grover challenges his 2004 state felony conviction for aggravated assault of a family member.[1] The respondent moved for summary judgment, (Docket Entry No. 12), and filed a copy of the state court record. Grover filed a response, (Docket Entry No. 13). Having evaluated the pleadings, the motion and response, the record, and the applicable law, this court grants the respondent's motion and, by separate order, enters final judgment. The reasons are set out below.

## I.    Background

Grover was indicted in Cause Number 970039 in the 232nd Judicial District Court of Harris County, Texas. The indictment charged the felony offense of aggravated assault of a family member. In June 2004, a jury found Grover guilty. Grover pleaded "not true" to two enhancement paragraphs alleging prior convictions for possession of a controlled substance (Cause Number 559500) and for

---

[1] Grover first filed Civil Action No. 4:07-4493. He later filed Civil Action 4:07-4533. Both suits challenge the same conviction and sentence. Civil Action 4:07-4533 was transferred to this court and consolidated with the earlier filed related case.

assault on a public servant (Cause Number 835452).   On July 1, 2004, the jury found both enhancement paragraphs to be true and sentenced Grover to a twenty-eight year prison term.   On December 15, 2005, Grover's conviction was affirmed.  *Grover v. State,* No. 14-04-00672-CR, 2005 WL 3435313 (Tex. App. – Houston [14th Dist.] 2005, pet. ref'd) (not designated for publication). The Texas Court of Criminal Appeals refused Grover's petition for discretionary review on May 17, 2006.  On November 1, 2006, Grover filed an application for state habeas corpus relief, which the Texas Court of Criminal Appeals dismissed for noncompliance with the appellate rules on December 20, 2006.  *Ex parte Grover,* Application No. 66,515-01 at cover.  Grover filed a second state habeas application on June 13, 2007, which the Texas Court of Criminal Appeals denied on October 10, 2007, without a hearing or written order, on the findings of the trial court.  *Ex parte Grover,* Application No. 66,515-02 at cover.

On December 18, 2007, this court received Grover's federal petition.  Grover contends that his conviction is void for the following reasons:

(1)  there was insufficient evidence to support the conviction;

(2)  trial counsel gave ineffective assistance;

(3)  appellate counsel gave ineffective assistance; and

(4)  Grover was denied a fair appellate review.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 12-13).

Each of these grounds is examined below.

## II.    Factual Background

The state court record establishes the facts shown at trial.  A thirteen-year-old girl, C.N.G., testified that she lived with her mother, Sharon Harris, her fourteen-year-old sister, B.R.G., her

sixteen-year-old sister, and her stepfather, Bryant Grover. (Reporter's Record, Vol. III, pp. 13-14, 17). C.N.G. testified that on December 3, 2003 at around 7:30 in the morning, she woke to a loud argument between her mother and Grover. She and her fourteen-year-old sister, B.R.G., knocked on her mother's bedroom door. Grover answered. (*Id.* at 19). Both her mother and Grover looked angry. One or both of them took the sixteen-year-old to school. Harris and Grover continued to argue. (*Id.* at 21). The mother, Sharon Harris, asked C.N.G. and B.R.G. to stay with her, so they followed her around the house. (*Id.* at 23). Harris left the house in her car, without the girls. Grover followed in his truck. (*Id.* at 24). When Harris returned to the house, the sisters opened the door for her. C.N.G. saw Grover go upstairs with an extension cord, paper towel, and a lighter. C.N.G. screamed that Grover was going to burn the house down. Harris and the girls ran outside into the front yard. Grover ran outside and pulled Harris back into the house, pushed her down, got on top of her, and put his hands around her neck, choking her. (*Id.* at 30). C.N.G. was afraid for her mother's safety. C.N.G. got a knife from the kitchen and stabbed Grover in the back. The knife bent because Grover was wearing a heavy jacket and he did not stop choking Harris. C.N.G.'s sister, B.R.G., put her hands on Grover's face to try to stop his breathing. Grover stopped choking Harris, got up, and pushed B.R.G. into the dining table. C.N.G. started crying. Grover picked up a couple of knives from the kitchen counter and told Harris and the sisters to go with him to the garage, which also served as Harris's office. (*Id.* at 34). Harris, C.N.G., and B.R.G. sat on a futon in the garage. Grover stood near them, holding the knives, and said that he was going to kill Harris and then himself. (*Id.* at 35). C.N.G. threw herself over her mother to protect her. Grover then told the girls and Harris to go upstairs. Harris was crying and, believing that Grover would kill her, told her daughters goodbye.

After a short time, Grover came upstairs and said that he would not kill Harris, just himself. He tied an extension cord to the top of the stairs and tried to hang himself. Harris used a knife to try to cut the cord, but she was only able to cut a little bit. (*Id.* at 37-38). Harris and the sisters left the house and went to the corner store. Grover came in, asked for his wife, then left. Grover later came back to live with Harris and her daughters.

C.N.C.'s fourteen year-old sister, B.R.G., also testified. (Reporter's Record, Vol. III, p. 49). B.R.G. testified that Harris had married Grover in August 2003. On the date in question, December 3, 2003, B.R.G. was taking a bath when she heard her mother and Grover arguing in a bedroom. (*Id.* at 51). She and C.N.G. knocked on the bedroom door. Grover opened the door. B.R.G. saw that his nose was bleeding, he looked angry, and Harris looked scared. Harris told B.R.G. to stay with her. Grover followed them around the house. Harris got into her car and Grover stood by the side until she backed up and he got out of the way. Grover followed Harris in his truck. They returned thirty minutes later and Grover went upstairs. B.R.G. heard her sister, C.N.G., say that Grover was going to burn the house down. Harris and the sisters ran outside. (*Id.* at 55). Grover came running out of the house, chased them, and grabbed Harris. B.R.G. testified that Grover had Harris on the ground and that he was on top of her with his hands on her neck, choking her. C.N.G. got a knife to stab Grover. B.R.G. used her hands to try to stop him from breathing and screamed at him to get off of her mother. Grover got up and pushed B.R.G. away. She fell against a table. Harris ran to the kitchen. (*Id.* at 58). Grover followed, grabbed more knives, and ordered them to go with him into the office. In the office, Grover paced up and down, holding one knife. He had put the other knives into a basket. (*Id.* at 63). B.R.G. described the knife he held as having a black handle and being curved. She also said it was a little pointed. Grover said that he was going to kill Harris

and then himself. B.R.G. was crying and begging him to stop. (*Id.* at 61). C.N.G. was crying and threw herself over Harris. Grover told Harris and the girls to go upstairs. Harris was telling the girls her life's story. Grover went into a different bedroom and asked for a razor. Harris and the girls saw Grover putting an extension cord around his neck. Harris ran outside and Grover fell to the floor. Harris and the girls ran to the corner store, where the cashier allowed them to hide behind the counter. Grover came to the store, asked for his wife, and left. Harris and the girls talked to the police and then they went to their grandmother's home.

Sharon Denise Harris testified she had married Grover on August 24, 2003, and he came to live with her and her children. (Reporter's Record, Vol. III, p. 79). Harris testified that she did not want to be in court and was testifying only because she had been subpoenaed. (*Id.* at 81-82). Harris testified that at about 7:30 in the morning of December 3, 2003, she was arguing with Grover about a message on his cell phone. Harris was upset about the message. At some point, Grover pushed Harris against the wall and choked her. She dug her fingers into his nostrils until he bled. Grover let her go when the children came into the room. (*Id.* at 83).

Harris went downstairs with her daughter, B.R.G. Harris told B.R.G. to stay by her side because she feared Grover. Harris got in her car and drove around the block, and Grover followed her. A few minutes after Harris and Grover returned home, C.N.G. said that Grover was going to burn the house down and Harris saw Grover trying to light a piece of paper with a lighter. Harris and her daughters ran out of the house. Harris reached the front of the driveway when Grover grabbed her from behind and brought her back to the house. (*Id.* at 86). Harris testified that she was five feet tall and 110 pounds and Grover was five feet, eleven inches tall and weighed 190 pounds. Grover dragged Harris into the living room, slammed her to the ground face first, and started choking her.

(*Id.* at 87).  Harris could not breathe.  B.R.G. tried to put her hands around his throat and C.N.G. tried to stab him.  Grover got off Harris and she went into the kitchen.  Grover followed, grabbed some knives from the utensil holder, and told Harris and her daughters to go into the office.  Grover told the sisters that he would kill their mother and himself.  (*Id.* at 91).  Grover was holding one of the knives and standing about fifteen feet away.  C.N.G. shielded Harris with her body and both girls were begging for their mother's life.  Grover told the girls to go into the bedroom and repeated that he was going to kill their mother and himself.  (*Id.* at 94).  Harris and her daughters went to C.N.G.'s room and sat on the bed.  Harris thought Grover would kill her.  She had an emotional conversation with her daughters.  Grover asked about a razor blade, then was quiet.  Harris left the bedroom and saw that Grover was trying to hang himself from the top of the stairs.  Harris grabbed a knife and tried to cut the extension cord that Grover was using, but she could not.  She ran outside with the knife still in her hand.  She planted the knife in her neighbor's yard and ran to the corner store.  (*Id.* at 95).  Harris described the knife as having a black handle, but she was not sure if that was the same knife Grover had held in the office.

Harris and her daughters went to the store, and she dialed 911.  The cashier let them hide in a booth and closed the door.  (*Id.* at 97).  Grover came, asked for his wife, and left.  Harris told the police officer what happened because her daughters had already given the information, but she did not want to press charges.  Harris showed the officer the knife she had hidden.  Grover did not come back to the house while the police were there.

Harris testified that Grover started coming over a few days after the incident and began living there around Christmas time.

Harris testified about two letters she wrote to help Grover after his arrest.  A week after Grover's arrest, she wrote a letter begging for his freedom and sent it to the defense attorney.  She wrote that letter to protect her husband.  (*Id.* at 104).  The second letter, an affidavit, was sent to the prosecutor, the judge, and the clerk, and asked that Grover be released.  Harris testified that Grover wanted her to send the letters to the prosecutor and judge.  (*Id.* at 112).

The cashier at the convenience store where Harris and the girls ran also testified.  (Reporter's Record, Vol. III, p. 114).  Srinivas Kudahi testified that the morning of December 3, 2003, Harris and her daughters came into his store screaming.  They looked frightened and were not wearing shoes.  They called the police.  Kudahi let them hide behind the counter.  Fifteen minutes later, Grover came to the store and asked for his wife.  Kudahi said that he did not know where she was, and Grover left.  (*Id.* at 120).

The Harris County Sheriff's deputy who came to the store, Charles W. Boening, also testified.  (Reporter's Record, Vol. III, p. 122).  On December 3, 2003, he was dispatched to the convenience store in response to a domestic disturbance call.  When he arrived, Harris came out to the patrol car  Deputy Boening saw that Harris and her daughters were shaken and scared and had been crying.  He saw that they had no shoes on.  (*Id.* at 127).  Harris said that she and her husband got into an argument, and he tried to kill her.  (*Id.* at 130).  She also told the officer that her husband had pulled a knife and threatened to kill her.  Harris pointed out the knife she placed in the neighbor's flower bed.  (*Id.* at 134).  Boening identified State's Exhibit 11 as the knife recovered from the neighbor's yard.  (*Id.* at 137).

At Harris's house, Deputy Boening found several knives in the kitchen on the counter.  While Boening was at Harris's house, Grover called her cell phone.  Based on the appearance of the house,

the evidence recovered, and Harris's statements, Boening determined that a crime had been committed.  (*Id.* at 144).  Grover was not arrested that day because he did not return to the house. Boening testified that the knives he found could cause death or serious bodily injury.

A Houston Police Department Officer, Michael J. Novak, testified about arresting Grover. (Reporter's Record, Vol. III, p. 149).  On February 10, 2004, Novak was dispatched to serve a felony warrant on Grover.  (*Id.* at 153).  Officer Novak handcuffed Grover and put him in the patrol car. (*Id.* at 155).  While Officer Novak was completing some paperwork in a different vehicle, he saw his partner run to the patrol car and followed.  He saw that Grover had brought his handcuffed hands to the front, taken one shoelace off and placed it around his neck and around the seatbelt holder, had wrapped the seatbelt around his neck, and was leaning forward.  The officers cut the belt and shoelace.  Grover became violent and began moving around the vehicle.  The officers took him out of the patrol car and Grover continued to try to get away.  The officers placed Grover in leg restraints.  He was screaming, struggling, and very combative.

The jury returned a guilty verdict.  This federal petition followed the sentence, direct appeal, and state habeas proceedings.

## III.   The Applicable Legal Standards

This case is governed by the federal habeas statutes, as amended by the Antiterrorism and Effective Death Penalty Act of 1996.  28 U.S.C. § 2254; *Woods v. Cockrell*, 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson*, 127 F.3d 409, 413 (5th Cir. 1997), citing *Lindh v. Murphy*, 521 U.S. 320 (1997).  Subsections 2254(d)(1) and (2) of AEDPA set out the standards of review.

The AEDPA states:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1)  In a proceeding instituted by an application for a  writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000).  A state-court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000).  A state court unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where

it should apply." *Id.* at 1495.  In deciding whether a state court's application was unreasonable, a court considers whether the application was "objectively unreasonable." *Id.* at 1495; *Penry v. Johnson,* 215 F.3d 504, 508 (5th Cir. 2000).  A question of fact found by the state court is "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill,* 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

Pure questions of fact are governed by § 2254(d)(2). *Martin v. Cain,* 246 F.3d 471, 475 (5th Cir. 2001).  A state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman,* 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke,* 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)).  This deference extends not only to express fact findings but also to the state court's implicit findings. *Garcia,* 454 F.3d at 444-45 (citing *Summers v. Dretke,* 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004)).  The petitioner's claims for relief are examined below under the applicable legal standard.

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules.  Section 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party.  Unless the petitioner can "rebut[ ] the presumption of correctness by clear

and convincing evidence," the state court's findings of fact must be accepted as correct. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Grover is proceeding *pro se.* A *pro se* habeas petition is construed liberally and is not held to the same standards as pleadings filed by lawyers. *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court broadly interprets Grover's state and federal habeas petitions. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

## IV.    The Claims Based on Sufficiency of the Evidence

Grover argues that there was no evidence that he intentionally threatened Harris by using and exhibiting a deadly weapon. Grover argues that a knife is not "per se" a deadly weapon and that there was no evidence that he acted with the necessary culpability. Grover states that the knife C.N.G. used on him, which was picked up, was not capable of causing death or bodily injury because it only bent when she tried to stab him. Grover states that he never made any gestures with the knife toward Harris or her daughters. Grover states that when he hung himself from the staircase, Harris used a knife to cut the extension cord, but it was not sharp enough to do so. He argues that the prosecutor did not prove this knife was a deadly weapon. In a related claim, Grover argues that there was no evidence to show that State's Exhibit 11 was the knife Grover used to threaten Harris. He claims that B R.G. described the knife as "kind of curved. It had a black handle, and it was curved. It was a little pointed." (Reporter's Record, Vol. III, p. 63). Grover argues that the knives used by C.N.G. and by Harris were incapable of cutting anything and therefore incapable of causing death or serious bodily injury. (Docket Entry No. 3, Supplement Petition for a Writ of Habeas Corpus, p. 7A2).

To review the legal sufficiency of the evidence, a federal court must consider whether, viewing all the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979). Credibility choices and conflicting inferences are to be resolved in favor of the factfinder. *United States v. Cyprian,* 197 F.3d 736, 740 (5th Cir. 1999), *cert. denied,* 531 U.S. 822 (2000). To determine whether the evidence is constitutionally sufficient to support the conviction, a court must examine whether the evidence satisfied the "substantive elements of the criminal offense as defined by state law." *Brown v. Collins,* 937 F.2d 175, 181 (5th Cir. 1991) (quoting *Jackson,* 443 U.S. at 324 n.16). The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. A reasonable trier of fact must be able to find that the evidence, whether direct or circumstantial, and all reasonable inferences, established guilt beyond a reasonable doubt. *United States v. Salazar,* 958 F.2d 1285, 1294 (5th Cir.), *cert. denied,* 506 U.S. 863 (1992).

Grover raised this issue on direct appeal. The Texas Court of Appeals found as follows:

> 1. Is the Evidence Legally Sufficient To Show That the Knife Was a Deadly Weapon?
>
> A person commits the offense of assault if he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; (2) intentionally or knowingly threatens another with imminent bodily injury; or (3) intentionally or knowingly causes physical contact with another when he knows or reasonably should believe that the other will regard the contact as offensive or provocative. Tex. Pen. Code Ann. § 22.01 (Vernon 2005). Although assault is generally a misdemeanor offense, the felony offense of aggravated assault results when either a serious bodily injury is inflicted, or when a deadly weapon is used or exhibited. § 22.02. Appellant appears to concede that he threatened Harris with imminent bodily injury, and also does not contest that the threat was made

intentionally or knowingly. Rather, appellant argues the evidence presented is legally insufficient to sustain a felony conviction for the aggravated circumstances.

Appellant first asserts there is no evidence the knife appellant used when making the threat is a deadly weapon. Under the Texas Penal Code, a "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Pen. Code Ann. § 1.07(a)(17)(B) (Vernon 2005). When there is no actual injury alleged to have been caused by the knife, the State must show the knife's capacity to cause death or serious bodily injury by showing the manner of its use, the size of the blade, threats made by the accused, or the physical proximity between the accused and the victim. *Soto v. State,* 864 S.W.2d 687, 691 (Tex. App. - Houston [14th Dist.] 1993, pet. ref'd) (citing *Blain v. State* 647 S.W.2d 293, 294) (Tex. Crim. App. 1983) (en banc)). The State may do so by offering testimony pertaining to the size of the blade, the blade's appearance of sharpness, the use of any brandishing motions, or the victim's fear of *serious* bodily injury or death. *Blain,* 647 S.W.2d at 294 (emphasis in original).

Harris' daughter [C.N.G.] testified that appellant made the threats with the knife blade "pointed out." Although she stated appellant did not lunge at any of them with the knife, she noted that he was approximately two feet away from them at the time he made the threats. In response to appellant's threats, [C.N.G.] stated that she threw herself on top of Harris to protect her because she believed appellant was serious about the threats. She also testified that Harris said "goodbye" to [B.R.G.] and her when they were upstairs.

Harris' other daughter [B.R.G.] testified that appellant threatened them with the knife held "in different ways." She described the knife as "pointed," "about this long," and "kind of curved" with a silver blade and a black handle. She stated that he "waved them . . . back and forth" as he talked, but did not lunge at them. [B.R.G.] also testified that she believed appellant's threats were serious, and that she also had a "goodbye" conversation with her mother.

Harris, who did not want to press charges against appellant, testified as an adverse witness. She could not remember how appellant was holding the knife, but stated that she felt scared when appellant threatened her while standing "maybe fifteen feet" away

from her.  She acknowledged that she believed appellant would follow through with his threats and that she had shared that belief in an emotional conversation with her daughters.

In sum, the State introduced testimony as to the size and appearance of the blade, the motions made by appellant, the physical proximity between appellant and Harris, and Harris' belief in the veracity of the threat at the time it was made.  Appellant, however, argues this evidence is insufficient to establish that the knife was capable of causing serious bodily injury or death, because (1) appellant was fifteen feet away from Harris and her daughters when he threatened them; (2) "appellant made no gestures or pointed any knife at anyone;" and (3) "there was no testimony regarding the size of the knife, how sharp it was, the length of the blade, or its shape."

We do not find these arguments persuasive.  First, although Harris testified that appellant stood at a distance of fifteen feet, [C.N.G.] testified that he stood only two feet away.  The weight to be given contradictory testimony is within the sole province of the jury because it turns on an evaluation of credibility and demeanor. *Gemoets v. State,* 116 S.W.3d 59, 70 (Tex. App.-Houston [14th Dist.] 2001, no pet.).  Harris testified that she was appearing only because she would go to jail if she did not testify, that she did not seek to press charges against appellant, and that she did not want to see her husband incarcerated.  It is entirely reasonable that a jury gave greater weight to the testimony of a teenage girl who willingly confronted the accused in court, than to the testimony of an adverse witness with an expressed desire to see him released.  Second, even if appellant did not gesture or point the knife, all three witnesses-including Harris-testified that they believed appellant was going to follow through on his threat.  A rational jury could conclude that testimony showing [C.N.G.]'s initiative to throw herself on top of Harris in an effort to keep appellant from stabbing Harris was sufficient evidence to show that appellant's threat to kill Harris was made with an instrument capable of causing serious bodily injury.  Finally, appellant's third point is contrary to the record, because [B.R.G.] testified as to the knife's size, color, and shape.

In support of his argument, appellant relies on *Alvarez v. State,* 566 S.W.2d 612 (Tex. Crim. App. [Panel Op.] 1978).  In *Alvarez,* a police officer attempting to break up a fight ordered all the participants to drop their weapons.  *Id.* at 613.  Alvarez, who was holding a wooden-handled hook-type linoleum knife, refused to

cooperate. *Id.* He advanced to within three or four feet from the officer, at which time the officer pointed his service revolver at Alvarez and ordered him again to drop the knife. *Id.* Alvarez then took a swing at the officer with the knife, and the officer responded by shooting Alvarez in the leg. *Id.* Alvarez continued to advance until the officer informed him that he (the officer) was going to have to kill Alvarez, at which time, Alvarez surrendered. *Id.* at 614. The Court held there was insufficient evidence that the linoleum knife was capable of causing death or serious bodily injury. *Id.* Appellant argues that his conduct was much less egregious than that of Alvarez, and asks us to hold that the evidence is insufficient to establish that the knife he used was not a deadly weapon.

It was not the type of weapon that led the Court to its holding, however, but the distance between the defendant and his putative target. The Eighth Court of Appeals addressed a scenario similar to the instant case in *Herbert v. State.* 631 S.W.2d 585 (Tex. App. - El Paso 1982, no pet.). *Herbert* also involved a domestic dispute in which a husband threatened to kill his wife with a kitchen knife. *Id.* at 586. As here, the complainant suffered no physical injuries from the knife. *Id.* The husband, however, did hold the knife to his wife's throat when he threatened to kill her. *Id.* On appeal, the husband also relied on *Alvarez. Id.* But, the court distinguished *Alvarez* as follows:

> The critical evidentiary factor [in *Alvarez*] was the distance between the actor and the complainant at the time of the assault. Brandishing a . . . linoleum knife at a distance of four feet did not constitute a manner of use posing a sufficient threat of serious bodily injury or death to justify the verdict. From both a practical and legal standpoint, the effective range of the weapon is of primary consideration in categorizing the instrument as deadly. This, more than any other factor, has led to the different treatment of firearms and knives in making this determination. The distance factor, alone, distinguishes . . . *Alvarez* from the present case. *Id.* Viewing the facts in a light most favorable to the verdict, appellant threatened Harris and her daughters with a kitchen knife when standing approximately two feet away. Because the scenario in this case is much closer to *Herbert* than *Alvarez,* we find the holding of the former to be more persuasive. Accordingly, we hold that the evidence is legally

sufficient to sustain a conviction for aggravated assault.

2. Is the Evidence Legally Sufficient To Show That the Knife Admitted at Trial Was the Knife Used When the Threat Was Made?

Appellant also argues that there is insufficient evidence to show that the knife entered into evidence at trial was the knife used by appellant when making the threat. At trial, the State introduced the knife Harris hid under the tree when leaving her home. Appellant alleges that no testimony was introduced at trial to link that knife to him, and asks that we reverse for that reason.

Even assuming this argument to be correct, it is not necessary that the weapon used be introduced into evidence at trial for the state to meet its burden of proof. *See Morales v. State,* 633 S.W.2d 866, 868-69 (Tex. Crim. App. [Panel Op.] 1982) (affirming a conviction when the court "knew nothing about the size and shape of the knife," but heard testimony as to the manner of its use); *see also Herbert,* 631 S.W.2d at 586. As discussed above, the testimonial evidence presented to the jury was legally sufficient to sustain the conviction.

Because we find that a rational jury could have found all the elements of aggravated assault beyond a reasonable doubt, we affirm appellant's conviction.

*Grover v. State,* No. 14-04-00672-CR, 2005 WL 3435313 (Tex. App. -- Houston [14th Dist.] 2005, pet. ref'd) (not designated for publication). The Texas Court of Criminal Appeals refused Grover's petition for discretionary review on May 17, 2006.

The record discloses legally and factually sufficient evidence that Grover threatened to kill Harris while exhibiting a knife that was capable of causing death or serious bodily injury. Officer Boening testified that the knives he found were deadly weapons. The State presented evidence as to the size of the weapon. The jury was able to view State's Exhibit 11, the knife Grover used to threaten Harris. The sisters described the knife and demonstrated its size. They also testified about Grover's repeated threats that he would kill Harris and then kill himself, the events leading up to his

threats, and his demeanor.  The sisters testified that they believed that Grover would kill their mother and took steps to protect her.  The jury also heard evidence that Grover was two feet away from B.R.G. while she was sitting with her sister and mother on a futon in the garage and Grover was pacing and holding the knife.  The evidence was sufficient to support Grover's conviction for aggravated assault.  Grover is not entitled to habeas relief on his sufficiency-of-the-evidence claim. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993), *cert. denied*, 510 U.S. 1141 (1994).

In a related claim, Ground 4, Grover complains that the Court of Appeals violated Grover's right to due process by acting as a "thirteenth juror."[2]  He argued that the appellate court noted that C.N.G. had testified that Grover was two feet from her.  Grover notes that Harris had testified that Grover was fifteen feet from her.  He complains that the appellate court reevaluated the evidence and substituted its judgment for that of the jury.  (Docket Entry No. 3, Supplemental Petition for a Writ of Habeas Corpus, pp. 8- 8A1).  Grover further asserts that the appellate court failed to review the introduction of State's Exhibit 11.  Grover argues that there was no evidence that he had used this knife and that it should not have been admitted at trial.  (Docket Entry No. 3, Supplemental Petition for a Writ of Habeas Corpus, p. 8A1).

In a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).  In a factual sufficiency review, the appellate court views all the evidence in a neutral light, both for and against the finding, and sets aside the verdict if the proof of guilt is so obviously weak as to undermine confidence in the

---

[2] Grover states that his fourth and fifth grounds are the same as his first ground for federal habeas relief.  (Docket Entry 13, Petitioner's Response, p. 4).

jury's determnation, because the verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although legally sufficient, is nevertheless against the great weight and preponderance of the evidence. *Watson v. State*, 204 S .W.3d 404, 414-15 (Tex. Crim. App. 2006). A jury is in the best position to evaluate the credibility of witnesses, and the appellate court gives deference to the jury's determinations. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). Although the appellate court should always be "mindful" that a jury is in the best position to decide the facts and that it should not order a new trial simply because it disagrees with the verdict, it is "the very nature of a factual-sufficiency review that . . . authorizes an appellate court, albeit to a very limited degree, to act in the capacity of a so-called 'thirteenth juror.'" *Watson*, 204 S.W.3d at 416-17. When an appellate court is "able to say, with some objective basis in the record, that the great weight and preponderance of the (albeit legally sufficient) evidence contradicts the jury's verdict[,] . . . it is justified in exercising its appellate fact jurisdiction to order a new trial." *Id*. at 417.

The record shows that the appellate court reviewed the legal sufficiency of the evidence and reviewed all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of aggravated assault beyond a reasonable doubt. The appellate court's conclusion that the evidence was sufficient is supported by the record. Grover is not entitled to federal habeas corpus relief on this claim.

## V.     The Claim of Ineffective Assistance of Trial Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and the petitioner suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668 (1984); *Martin v. Cain*, 246 F.3d 471, 477 (5th Cir. 2001). The district court may dispose of a claim if counsel either rendered reasonably

effective assistance or no prejudice can be shown.  A court evaluating a claim of ineffective assistance need not address the reasonableness component first.  If a petitioner fails to make one of the required showings, the court need not address the other.  *Strickland,* 466 U.S. at 697.

In assessing the reasonableness of counsel's performance, the court must indulge a strong presumption that the performance falls within the "wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy."  *Strickland,* 466 U.S. at 689; *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir. 1993).  If counsel's action is based on well-informed strategic decisions, it is "well within the range of practical choices not to be second-guessed."  *Rector v. Johnson,* 120 F.3d 551, 564 (1997) (quoting *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993)).  In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance.  *Strickland v. Washington,* 466 U.S. 668, 689 (1984).  In general, scrutiny of an attorney's performance is highly deferential.  The attorney's performance is evaluated in light of all the circumstances as they existed at the time and is presumed to have been adequate.  *Id.* at 689-90.  Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable.  *Strickland,* at 690-91.  Even if in retrospect the strategy to pursue one line of defense over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it.  *Adams v. Wainwright,* 709 F.2d 1443, 1445 (11th Cir. 1983), *cert. denied,* 464 U.S. 1063 (1984).  Tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance.  *Ransom v. Johnson,* 126 F.3d 716, 721 (5th Cir.), *cert. denied,* 522 U.S. 944 (1997).

As to the prejudice portion of the inquiry, a convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. An attorney's strategic choices based on information supplied by the defendant and gathered from an investigation of the relevant law and facts "are virtually unchallengeable." *Id.* at 691.

Grover asserts that trial counsel rendered ineffective assistance at trial in several respects. The state habeas court found the facts stated in trial counsel's affidavit to be true and made the following findings and conclusions:

> 1.    The applicant fails to demonstrate that counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.
>
> 2.    The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel.

*Ex parte Grover,* Application No. 66,515-02 at 194. The Court of Criminal Appeals expressly based its denial of habeas relief on these findings.   These findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1).   As explained in detail below, Grover has not identified or produced clear and convincing evidence to rebut these findings, and the state court's decision as to the effective assistance of counsel reasonably applied the law to the facts, consistent with clearly established federal law.

The record demonstrates that defense counsel had practiced criminal law for forty-five years, and was familiar with the facts of the case. He rigorously cross-examined the State's witnesses. *Ex parte Grover,* Application No. 66,515-02 at 190-91.  Counsel followed a reasonable strategy of

showing that Grover had been upset, that he did not intend to harm Harris, and that Harris had taken him back into her home and they were living together with her daughters as a family.

In his first claim of ineffective assistance, Grover asserts that counsel failed to object to Officer Boening's testimony that the knife was "per se" a deadly weapon. Grover argues that straight razors, utility knives, and cooking utensils are manifestly designed for other purposes and do not qualify as "per se" deadly weapons. Grover states that the prosecutor made improper statements during voir dire and closing argument that the knife was a deadly weapon. In support of this claim, Grover argues that C.N.G. tried to stab Grover in the back three times, but the knife only bent, and that B.R.G. never testified that the knife was capable of causing death or serious bodily injury. Grover points out that Harris tried unsuccessfully to cut the cord that he used to try to hang himself, but the knife was not sharp enough. Grover maintains that there was no evidence that any knife was "per se" a deadly weapon.

Trial counsel submitted an affidavit during the state habeas proceedings. The relevant questions and answers are as follows:

> 1. State whether counsel believed it was necessary or beneficial to object to the prosecutor's statement that a knife was *per se* a deadly weapon (if so, state whether counsel objected and the court's ruling on the objection; if not, state why counsel did not believe such objection was necessary or beneficial);
>
> In Mr. Grover's memorandum in support of post-conviction habeas corpus, he stated, "the complainant testified that applicant told her kids that that[sic] he was going to kill their mother and himself." Based on the testimony offered at trial, I believe there was sufficient evidence to support the State's claim that the knife was a deadly weapon, and I did not believe it was necessary or beneficial to object to any reference by the State or witnesses to the knife as a deadly weapon. Furthermore, according to the notes I took during the

testimony at trial, I do not recall it being said that the knife was "per se" a deadly weapon.

*Ex parte Grover*, Application No. 66,515-02 at 187-188.

In his second claim of ineffective assistance, Grover asserts that the trial court misstated the law when it instructed the jury that a knife was a deadly weapon. (Docket Entry No. 3, Supplemental Petition for a Writ of Habeas Corpus, p. 7B2). Grover asserts that his counsel should have objected to the jury charge. The relevant portions of defense counsel's answers to questions raised in the state habeas proceedings are as follows:

> 2. State whether counsel believed it was necessary or beneficial to object to the jury charge on that ground that the application portion of the charge did not properly apply the law to the facts of the case with regard to whether the knife used was a deadly weapon (if so, state whether counsel objected and the court's ruling on the objection; if not, state why counsel did not believe such objection was necessary or beneficial);

> The Court stated the following in its charge: "Deadly weapon means anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or anything else that in the manner of its use or intended use is capable of causing death or serious bodily injury." The Court further stated, which I believe to cover the application portion, the following language: "Now if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the third day of December 2003, the defendant Bryant Grover, did then and there unlawfully, intentionally or knowingly threaten Sharon Harris, a member of the defendant's family, with imminent bodily injury by using or exhibiting a deadly weapon, namely a knife, then you will find the defendant guilty as charged in the indictment."

> As pointed out in my response above, there was testimony from [C.N.G.], [B.R.G.], and the complainant Sharon Harris that Mr. Grover stated he was going to kill Sharon Harris and then himself. This showed Mr. Glover's capability to use the knife as a deadly weapon. Quoting from page twenty-one of Mr. Grover's Motion for Evidentiary Hearing, the following language is found: "In applicant's

22

case, the court instructed the jury in the abstract portion as follows:
Deadly weapon means anything manifestly designed, made or adapted
for the purpose of inflicting serious bodily injury or anything that in
the manner of its intended use is capable of causing death or serious
bodily injury. The application portion of the charge authorized
applicant's conviction if the jury found beyond a reasonable doubt
that applicant intentionally or knowingly threatened Sharon Harris
with imminent bodily injury by using or exhibiting a deadly weapon,
namely a knife."

Based on this information, I believe the court's charge was
proper and I did not believe it was necessary or beneficial to object to
the trial court's charge regarding the deadly weapon allegation.

*Ex parte Grover,* Application No. 66,515-02 at 188-89. The state court found defense counsel's

affidavit credible and found that the representation was effective. These findings are entitled to a

presumption of correctness. 28 U.S.C. § 2254(e)(1). Grover has not produced clear and convincing

evidence to rebut these findings. The state court's decision as to the effective assistance of counsel

reasonably applied the law to the facts, consistent with clearly established federal law. Grover has

not shown a basis to find ineffective assistance on these claims.

In his third claim of ineffective assistance, Grover asserts that the prosecutor injected false

testimony during its closing argument, which misled the jury to believe that Grover used State's

Exhibit 11, the knife, to threaten Harris. The trial court admitted the knife based on Officer

Boening's testimony. Grover claims that Officer Boening did not state whether State's Exhibit 11

was the knife C.N.G. had used to try to stab Grover, the knife Grover used to threaten Harris, or the

knife Harris used to try to cut the extension cord. Grover argues that the prosecutor's argument

made the jury believe that State's Exhibit 11 was the knife Grover used to threaten Harris. Grover

argues that the prosecutor's argument caused the jury to disregard B.R.G.'s testimony that the knife

was curved and that none of the eyewitnesses testified that Grover used State's Exhibit 11 to threaten

Harris.  Grover argues that his counsel should have objected to the prosecutor's summation of the evidence.  (Docket Entry No. 15, Supplemental Petition for a Writ of Habeas Corpus, pp. 7B2-7B3).

The relevant questions and answers set out in counsel's affidavit submitted during the state habeas proceedings are as follows:

> 3.  State whether counsel believed it was necessary or beneficial to object to the prosecutor's argument at the guilt stage of trial, based on the objection that it injected facts outside the record, namely that the knife admitted into evidence was the knife actually used to commit the offense (if so, state whether counsel objected and the court's ruling on the objection; if not, state why counsel did not believe such objection was necessary or beneficial).

> I objected to the admission of the knife during the trial. Sharon Harris told Deputy Boening where the knife was, and the deputy retrieved the knife from the next door neighbor's yard.  My objection at the time the knife was introduced was that it had not been tied in totally.  During my argument at the guilt or innocence stage, I stated, "there was some conflict to the testimony as to what type of knife.  One of the girls testified that the knife was a curved knife. Obviously, this isn't a curved knife.   I would think a better investigation protocol would have been to actually check the weapon for fingerprints and that wasn't done.  Also, this was found in the neighbor's yard."  Based on the fact that I objected to the introduction of the knife in evidence and that I addressed the issue of the knife in closing argument, I did not believe it was necessary or beneficial to further object to the prosecutor's argument in this regard.

*Ex parte Grover*, Application No. 66,515-02 at 189.  The record shows that defense counsel made reasonable strategic choices of the sort not to be second guessed.  Grover has not identified or produced clear and convincing evidence to rebut these findings.  The state court's decision that counsel provided effective assistance reasonably applied the law to the facts, consistent with clearly established federal law.  This claim does not provide a basis to find ineffective assistance.

In his fourth claim of ineffective assistance, Grover asserts that the prosecutor misstated the law in telling the jury about whether terroristic threat was a lesser-included offense of aggravated assault. The relevant question and answer that defense counsel submitted in his affidavit in the state habeas proceedings are as follows:

> 4. State whether counsel believed it was necessary or beneficial to object to the prosecutor's alleged misstatement of law regarding whether terroristic threat was a lesser-included offense (if so, state whether counsel objected and the court's ruling on the objection; if not, state why counsel did not believe such objection was necessary or beneficial).

> In her argument, the prosecutor stated, "the defense attorney has said oh no, no, I don't want you [sic] think this is aggravated assault. I want you to think this is terroristic threat. But let me tell you this before you consider whether or not this is a terroristic threat, you have to consider aggravated assault. If you believe beyond a reasonable doubt that an aggravated assault was committed, you don't get to consider whether or not it was a terroristic threat, the lesser included in the charge." Therefore, it's my belief that the prosecutor did not make a misstatement of law regarding terroristic threat as a lesser included offense.

*Ex parte Grover,* Application No. 66,515-02 at 190.

In his fifth and related claim of ineffective assistance, Grover asserts that counsel erred in requesting a jury instruction on the lesser included offense of terroristic threat. He claims that this was not the correct lesser-included-offense of aggravated assault by threat. In the affidavit submitted during the state habeas proceedings, the following question and counsel's answer appear:

> 5. State whether counsel believed it was necessary or beneficial to request a jury instruction on the lesser included offense of making a terroristic threat (if so, state whether counsel requested such instruction and the court's ruling on the instruction; if not, state why counsel did not believe such instruction was necessary or beneficial).

> As I recall, I first made a request for deadly conduct and the court gave me an instruction of the lesser included offense of terroristic threat. I did think that such request of a lesser included offense, whether it be deadly conduct or terroristic threat, was necessary for Mr. Grover's defense, since either was a misdemeanor and he was on trial for a felony.

*Ex parte Grover,* Application No. 66,515-02 at 190. Grover has not identified or provided clear and convincing evidence to rebut these findings. The record shows that the state court's decision as to the effective assistance of counsel reasonably applied the law to the facts, consistent with clearly established federal law. Grover has not shown a basis for relief on these claims.

In his sixth claim of ineffective assistance, Grover asserts that counsel failed to object to Officer Novak's testimony about extraneous acts, referring to the testimony about Grover's conduct during his arrest. The following question and answer are included in counsel's affidavit submitted during the state habeas proceedings:

> 6. State whether counsel believed it was necessary or beneficial to object to Officer Novak's testimony about the applicant's conduct and behavior at the time of his arrest (if so, state whether counsel objected and the court's ruling on the objection; if not, state why counsel did not believe such objection was necessary or beneficial); and

> I did not believe from a trial strategy standpoint that it was necessary to object to Officer Novak's testimony about Mr. Grover's conduct because I was trying to elicit sympathy from the jury for Mr. Grover, showing that he was emotionally unstable. Furthermore, the officer could certainly testify as to what he observed during Mr. Grover's arrest.

*Ex parte Grover,* Application No. 66,515-02 at 190-91. Counsel's explanation shows that he made a strategic decision of the sort that cannot be second guessed by a federal habeas court. The state court's finding of reasonable assistance is entitled to a presumption of correctness that Grover has

not rebutted.  The state court's decision as to the effective assistance of counsel reasonably applied

the law to the facts, consistent with clearly established federal law.  Grover is not entitled to relief

on this claim

In his seventh claim of ineffective assistance, Grover asserts that counsel did not object to

the prosecutor's comments during the closing argument that Grover was a "batterer."  Grover argues

that the prosecutor's statements were not supported by any witness's testimony.  (Docket Entry No.

3, Supplemental Petition for a Writ of Habeas Corpus, p. 7B6).  In his affidavit submitted during the

state habeas proceedings, the following question and answer appear:

> 7.  State whether counsel believed it was necessary or beneficial to
> object to the prosecutor's statements that Applicant was "a batterer"
> (if so, state whether counsel objected and the court's ruling on the
> objection; if not, state why counsel did not believe such objection was
> necessary or beneficial).
>
> Considering the fact that there was testimony that Mr. Grover
> had threatened to kill Ms. Harris, that he had thrown her to the
> ground, had his hands around her neck and was choking her, and that
> he repeatedly said to the children that he was going to kill her, I
> figured from a trial strategy standpoint that if I objected to the
> prosecutor's statement that he was "batterer," I would look very
> foolish.

*Ex parte Grover,* Application No. 66,515-02 at 191.  Counsel's explanation shows that he made a

strategic decision of the sort that cannot be second guessed by a federal habeas court.  The state

court's finding of reasonable assistance is entitled to a presumption of correctness that Grover has

not rebutted.  The state court's decision as to the effective assistance of counsel reasonably applied

the law to the facts, consistent with clearly established federal law.  Grover is not entitled to relief

on this claim

In his eighth claim for federal habeas relief, Grover asserts that counsel asked questions that had the effect of informing the jury that Grover was in jail during the trial.  He claims that this violated his presumption of innocence.  (Docket Entry No. 3, Supplemental Petition for a Writ of Habeas Corpus, pp. 7B4-7B5).  It appears that Grover is referring to counsel's cross-examination of Harris.  Counsel questioned Harris about the letters she wrote asking that the charges against Grover be dropped.  In eliciting this testimony, counsel questioned Harris about whether she had spoken to Grover while he was in the Harris County Jail and whether he knew she would write the letters.  As explained in his affidavit, counsel's strategy was to show that Grover's behavior on December 3, 2003 was the result of mental instability, and that his family relationships had subsequently returned to normal. He tried to show that Ms. Harris still loved Grover and wanted him back in her life.  The questions Grover complains of were part of counsel's strategy and fell within the wide range of reasonable professional assistance.  Grover is not entitled to federal habeas relief on this claim

Grover also complains that during voir dire, the prosecutor suggested that Grover was guilty. (Reporter's Record, Vol. IV, p. 31). Grover refers to the following statement, "No. 1, I have to prove that the defendant is the person who committed the crime.  The person sitting in the chair is the person that committed the crime."  (Reporter's Record, Vol. II, p. 35).  Grover complains that counsel failed to object to the inflammatory statement.  The record shows that the prosecutor was listing the elements of the offense of aggravated assault. (*Id.* at 35-36). The prosecutor told the jury that she had to prove that the person "sitting in the chair committed the offense."  The prosecutor referred to Grover as the person sitting in the chair, and that she had to prove that he committed the

charged offer se.  The prosecutor did not state that Grover was guilty.  Any objection by counsel would have been frivolous.  Grover has not shown a basis for relief on this claim.

Counsel's strategy was to try to show that Harris did not regard Grover as any source of danger to herself or her children.  Counsel tried to show that Harris was testifying against her husband because she had been issued a subpoena. He presented letters showing that Harris had tried to have the criminal charges against her husband dropped.  Counsel tried to show that shortly after the December 3, 2003 incident, Grover started coming over to Harris's home, and he resumed living there by the end of December 2003.  Counsel tried to show that Grover had good relations with the children and that he had apologized to them for what had happened.  Counsel's overall strategy was reasonable in light of the facts and the law and cannot provide a basis for ineffective assistance.  The state court's decision to deny habeas relief on Grover's ineffective assistance of counsel claims was not contrary to clearly established federal law.  Grover is not entitled to federal habeas corpus relief on the basis of ineffective assistance of trial counsel.

## VI.    The Claim of Ineffective Assistance of Appellate Counsel

Grover alleges that appellate counsel rendered ineffective assistance by failing to raise several issues on appeal.  (Docket Entry No. 1, Petition for a Writ of Habeas Corpus, pp. 8C-8E).  A criminal defendant has a constitutional right to effective assistance of counsel on direct appeal. U.S. CONST. AMEND. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington,* 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967).  An ineffective assistance claim is governed by *Strickland v. Washington*, 466 U.S. at 687.  *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel).  To establish ineffective assistance of counsel a petitioner must show (1)

that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688, 694. A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

With respect to *Strickland*'s deficiency prong, "[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999). "The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.), *cert. denied*, 493 U.S. 970 (1989); *see also Jones v. Barnes*, 463 U.S. 745, 751-53 (1983). Counsel is obligated to raise and brief those issues that are believed to have the best chance of success. *See Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003), *cert. denied*, 540 U.S. 1154 (2004); *United States v. Williamson*, 183 F.3d 458, 462-63 (5th Cir. 1999). To show ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal fell below an objective standard of reasonableness. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000), citing *Strickland*, 104 S. Ct. at 2064. This reasonableness standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id.*, quoting *Williamson*, 183 F.3d at 462-63.

As for *Strickland*'s prejudice prong, "[p]rejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable." *United States v. Dovalina,* 262 F.3d 472, 474 (5th Cir. 2001).

Grover first argues that appellate counsel should have challenged the sufficiency of the enhancement paragraph relating to the conviction in Cause Number 559500 for possession of a controlled substance. Grover asserts that the prosecutor presented the fingerprint expert, Deputy Davis, who testified to the basis for introducing the judgment and sentence from Cause Number 559500 and Grover's pen packet. Grover states that Deputy Davis testified that there was no fingerprint or Exhibit 18. The felony offense charged in Exhibit 18 was for delivery of cocaine, not possession. Grover complains that admission of this prior conviction allowed the jury to consider punishment as a habitual criminal and a minimum sentence of 25 years as opposed to five years.

Under *Beck v. State,* 719 S.W.2d 205 (Tex. Crim. App. 1986), a prior conviction alleged for enhancement may be established by certified copies of a judgment and sentence and authenticated copies of the Department of Corrections records, including fingerprints supported by expert testimony identifying them as identical with known prints of the defendant. *Id.* at 209; *see also id.* at 210 (holding that a pen packet alone is insufficient to prove a prior conviction and that there must be independent supporting evidence). In the present case, the State introduced pen packets to support the enhancement paragraphs. (Reporter's Record, Vol. V, State's Exhibits 15 & 18). Deputy Stephen Allen Davis testified that he was assigned to the Identification Division of the Harris County Sheriff's Department. (Reporter's Record, Vol. IV, pp. 8-9). The State called Deputy Davis to support its contention that the pen packets belonged to Grover. (Reporter's Record, Vol. IV, p. 8). First, the State established Deputy Davis's qualifications. He stated that he was trained to take

fingerprints and that he had made many fingerprint comparisons during his career. Deputy Davis testified that he took the fingerprints of Grover shortly before taking the stand. (State's Exhibit 20). Davis identified State's Exhibit 13 as copies of jail cards. He explained that a jail card is created each time a person is booked into the Harris County Jail. The jail card contained the person's name, sex, race, date of birth, charge, and cause number. It also contained fingerprints made at the time of booking and at the time of release. (Reporter's Record, Vol. IV, p. 11).

Deputy Davis testified that State's Exhibit 18, the judgment and sentence in Cause Number 559500, did not contain a fingerprint, but it did have the name of Bryant Alexander Grover and a Cause Number of 559500. (*Id.* at 17). Deputy Davis testified that State's Exhibit 13 consisted of several jail cards, including one that had the Cause Number of 559500.[3] This jail card also had a fingerprint. Deputy Davis compared the fingerprint on State's Exhibit 13 with State's Exhibit 20 and found they both belonged to Grover. Deputy Davis testified that State's Exhibit 13D and Exhibit 18 both related to Cause No. 559500, the same court – the 263rd Judicial District Court of Harris County, Texas – and to Bryant Alexander Grover. State's Exhibit 18 showed that the offense charged was delivery of cocaine. Grover was arrested on March 16, 1990 for possession of cocaine. He was arrested again on March 24, 1990 for the same offense. He pleaded guilty to both offenses and received a three-year sentence on both convictions. (Reporter's Record, Vol. IV, p. 31).

Defense counsel objected to the introduction of State's Exhibit 18 on the ground that it did not contain a fingerprint and complained about the use of State's Exhibit 13 to link Grover to the judgment in State's Exhibit 18. The court overruled the objection. (Reporter's Record, Vol. IV, p.

---

[3] The jail card for Cause Number 559500 is labeled as State's Exhibit 13D. (Reporter's Record, Vol. V, State's Exhibit 13D). At trial, this jail card was incorrectly referred to as State's Exhibit 13B.

22). Appellate counsel could reasonably have determined that there was such strong evidence that it was neither necessary nor prudent to raise that challenge on appeal.

Grover next argues that he was entitled to a charge on the lesser included offense of deadly conduct. Trial counsel requested an instruction on deadly conduct, but the trial court refused. Grover alleges that appellate counsel was ineffective for not challenging the trial court's failure to give the lesser included offense instruction. Grover argues that because the State failed to prove that he "intentionally or knowingly threatened another with imminent bodily injury," appellate counsel should have raised on appeal the trial court's failure to give the lesser included offense instruction for deadly conduct.

Texas law provides that a person commits deadly conduct if he "he recklessly engages in conduct that places another in imminent danger of serious bodily injury." TEX. PENAL CODE § 22.05. Under Texas law, a trial court must submit an instruction on a lesser included offense to the jury if the lesser included offense is included within the proof necessary to establish the offense charged, and there is some evidence to permit the jury to rationally find that the defendant is guilty only of the lesser offense. *East v. Scott*, 55 F.3d 996, 1006 (5th Cir. 1995). There must be some evidence in the record showing that if the defendant is guilty, he is guilty only of the lesser offense. *Aguilar v. Dretke*, 428 F.3d 526, 531 n.2 (5th Cir. 2005); *see also Dowthitt v. Johnson*, 230 F.3d 733, 757 (5th Cir. 2000)(noting that it is not enough that a jury disbelieve crucial evidence pertaining to the greater offense; rather, there must be some evidence directly germane to the lesser included offense for the factfinder to consider before an instruction on the lesser included offense is warranted).

In the present case, C.N.G. and B.R.G. both testified that Grover threatened to kill Harris while holding a knife and standing approximately two feet from them. Their testimony would not

show that Grover was guilty *only* of deadly conduct, because according to their testimony, Grover intentionally threatened Harris. Because there was no evidence presented at trial showing that Grover was guilty *only* of deadly conduct, he was not entitled to a jury charge on this lesser included offense.

Grover also claims that appellate counsel provided ineffective assistance in failing to raise the claim that the evidence was legally and factually insufficient to show that Grover intentionally threatened Harris with bodily injury by exhibiting a deadly weapon and in failing to raise the argument that Grover did not act with the requisite mental state. The record provides no legal or factual support for Grover's arguments that the evidence was insufficient to support his conviction for aggravated assault. The jury heard ample evidence to support the conviction. Raising an additional appellate challenge based on the insufficiency of the evidence as to Grover's culpable mental state would have been frivolous. *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (finding that if the grounds underlying the alleged errors by counsel on appeal were found to lack merit, appellate counsel's failure to pursue relief on those bases does not constitute ineffective assistance of counsel; there is no deficient performance, no prejudice, and the reliability of the result is not undermined).

The record shows that appellate counsel argued, in his sole point of error, that the evidence was legally insufficient to support the jury's verdict that Grover committed aggravated assault by using or exhibiting a deadly weapon, namely a knife. (Brief for Appellant, p. 4). Counsel's decision not to argue that the evidence was insufficient to establish the prior conviction or that the trial court erred in instructing the jury, falls within the wide range of reasonable professional assistance not to be second guessed. There is no showing of a reasonable probability that the result of the

proceeding would have been different had counsel raised additional grounds on appeal. *Duhamel v. Collins,* 955 F.2d 962, 965 (5th Cir. 1992).

The state habeas court found the totality of the representation afforded Grover was sufficient to protect his right to reasonably effective assistance of counsel. *Ex parte Grover,* Application No. 66,515-02 at 94. The Court of Criminal Appeals explicitly based its denial of habeas relief on these findings. These credibility determinations are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). Grover has not produced clear and convincing evidence to rebut these findings. The state court's decision as to the effective assistance of appellate counsel reasonably applied the law to the facts, consistent with clearly established federal law. Grover is not entitled to federal habeas corpus relief on this claim.

## VII. Conclusion

The respondent's Motion for Summary Judgment, (Docket Entry No. 12), is granted. Grover's petition for a writ of habeas corpus is denied. This case is dismissed. Any remaining pending motions are denied as moot.

The record does not support the issuance of a certificate of appealability. The standard is as follows:

> . . . petitioner need not show that his habeas petition will ultimately prevail on the merits in order for this court to issue a COA. [*Miller-El v. Cockrell,* 537 U.S. 322, 337, 123 S. Ct. 1029, 154 L. Ed.2d 931 (2003).] In fact, the Supreme Court has specifically instructed that a court of appeals should not deny a COA simply because the petitioner has not demonstrated an entitlement to relief. *Id.* Instead, "'where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Id.* at 338 (quoting [*Slack v. McDaniel,* 529 U.S. 473, 484,

120 S. Ct. 1595, 146 L. Ed.2d 542 (2000)]). "Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination." *Shisinday v. Quarterman,* 511 F.3d 514, 520 (5th Cir. 2007) (citing *Fuller v. Johnson,* 114 F.3d 491, 495 (5th Cir. 1997)).

*Haynes v. Quarterman,* 526 F.3d 189, 2008 WL 1808457 at *3 (5th Cir. 2008).

Grover has not made the necessary showing for issuance of a certificate of appealability.

A certificate of appealability will not issue.

SIGNED on February 24, 2009, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge